# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

_____

DONALD MICHEL,

                                        Plaintiff,

          vs.                                            9:15-CV-1187
                                                         (DNH/ATB)

SGT. MANNA, *et al*,

                                        Defendants.

_____

DONALD MICHEL, Plaintiff *pro se*
TIMOTHY P. MULVEY, Asst. Attorney General for Defendants

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge.  In this civil rights complaint, plaintiff, an inmate, alleges that defendants have violated his First Amendment right to practice his Rastafarian religion by enforcing a New York State Department of Corrections and Community Supervision ("DOCCS") grooming policy in a manner that prevents him from growing and styling his hair in accordance with his religious beliefs. (Compl. ¶ 15) (Dkt. No. 1).  Plaintiff also includes an Equal Protection claim. (Compl. ¶ 16).  Plaintiff seeks a substantial amount of monetary damages. (Compl. at 10[1]).

Presently before the court is the defendants' motion for summary judgment on qualified immunity grounds. (Dkt. No. 23).  Plaintiff has responded in opposition to

_____

[1]  All page references in the record citations are to the pagination in the CM/ECF system.

the defendants' motion. (Dkt. No. 30). For the following reasons, this court agrees with defendants and recommends granting their motion for summary judgment as to plaintiff's First Amendment claim. This court also recommends dismissing plaintiff's Equal Protection claim without prejudice, *sua sponte* pursuant to 28 U.S.C. §1915(e)(2)(B)(ii).

## DISCUSSION

### I.   Facts

DOCCS Directive 4914, dated March 1, 2013, is the DOCCS grooming policy at issue in this proceeding ("Grooming Policy"). It provided in relevant part that:

> Only basic haircuts will be allowed. Only one straight part is allowed with no other lines, designs, or symbols cut into the hair . . . . The only braids allowed are the corn row style . . . . No designs or symbols may be woven into the hair . . . . The dreadlock hairstyle is allowed. When worn, dreadlocks must extend naturally from the scalp and may not be woven, twisted, or braided together forming pockets that cannot be effectively searched.

(Dkt. No. 23-3, Ex. B. to Mulvey Decl., at 21).

At all times relevant to this proceeding, plaintiff was an inmate at the Auburn Correctional Facility.[2] (Compl. at 2). He is a registered member of the Rastafarian faith, and therefore required by his religion to grow his hair in dreadlocks. (Compl. at 3; Dkt. No. 23-3, Ex. B. to Mulvey Decl, at 22). On two occasions in August 2013, plaintiff was stopped by defendant Manna, an Auburn Correctional Officer, who informed him that his hairstyle violated the Grooming Policy, because his hair was

---

[2] Plaintiff is currently housed at the Clinton Correctional Facility. (Compl. at 2).

woven into a pattern or design. (*Id*.).  Plaintiff disagreed, and insisted that his hair was merely in the "beginning stages" of dreadlocks. (Dkt. No. 23-2, Ex. B. to Mulvey Decl., at 5).  Defendant Manna still ordered plaintiff to remove the design from his hair.  (Compl. at 3).

Frustrated by defendant Manna's response, plaintiff filed a grievance seeking guidance regarding his dreadlocks. (Dkt. No. 30-2, Ex. A to Pl.'s Decl., at 1).  Plaintiff states that when he appeared before the Inmate Grievance Resolution Committee ("IGRC"), they advised him that the First Amendment guaranteed his right to grow dreadlocks. (Compl. ¶ 3; Dkt. No. 30-1, Pl.'s Reply to Statement of Material Facts ¶ 14; Dkt. No. 30-2, Ex. A. to Pl.'s Decl., at 1).  Plaintiff also states that the IGRC provided a written determination to that effect on or about September 6, 2013.[3] (Compl. at 3).

On September 10, 2013, defendant Manna stopped plaintiff again and advised him that his hair was not in compliance with the Grooming Policy. (Dkt. No. 23-7, Manna Decl. ¶ 10).  Plaintiff argued that his hairstyle was permitted, by both the First Amendment and the Grooming Policy. (Compl. at 5).  Defendant Manna issued

---

[3] Plaintiff did not receive a copy of this September 6, 2013 grievance determination in response to his discovery requests.  Plaintiff first brought this issue to the court's attention on August 12, 2016, almost three months after the discovery deadline had passed. (Dkt. No. 22).  As part of his opposition to defendants' motion, plaintiff argues that this document is essential to his response, and that summary judgment should be denied pursuant to Fed. R.Civ.P. 56(d). (Dkt. No. 30, Pl.'s Br. at 10).  I have considered plaintiff's argument, but conclude that documentary proof of the IGRC's finding that plaintiff had a right to wear dreadlocks is not necessary to respond to defendants' motion.  Although such proof may go to the merits of plaintiff's First Amendment claim, it does not impact the qualified immunity arguments raised in this summary judgment motion, as discussed below.

plaintiff a misbehavior report dated September 10, 2013 for failure to follow his earlier direct order to conform to the Grooming Policy. (Dkt. No. 23-3, Ex. B. to Mulvey Decl., at 9). In the misbehavior report, defendant described plaintiff's hair as "woven to look like a checker board with large diamonds woven into the side of his head." (*Id*. at 9).

Defendant Tabate presided over the disciplinary hearing in connection with the misbehavior report. (Dkt. No. 23-8, Tabate Decl. ¶ 2). At the commencement of the hearing on September 14, 2013, defendant Tabate observed plaintiff's hairstyle and noted that it had "designs" in it. (Dkt. No. 23-2, Ex. A. to Mulvey Decl. ("Hearing Transcript") at 3-4). Plaintiff's hearing was then adjourned so that defendant Manna could testify. (Hearing Transcript at 2). When the hearing reconvened on September 27, 2013, plaintiff testified that he had changed his hairstyle so that it no longer had designs in it. (Hearing Transcript at 3). Defendant Manna agreed that plaintiff's hairstyle no longer had the prohibited designs or shapes in it. (Hearing Transcript at 2). After considering the testimony and other evidence, defendant Tabate found plaintiff guilty of disobeying a direct order from a correctional officer and imposed a penalty of 17 days keeplock[4] confinement, with associated loss of privileges. (Hearing Transcript at 3-4). On October 4, 2013, defendant Graham denied plaintiff's appeal of the hearing officer's decision. (Dkt. No. 23-6, Graham Decl. ¶ 2).

While his disciplinary hearing was pending, plaintiff filed a grievance which

---

[4] "Keeplock" is confinement to one's own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

claimed that defendant Manna's actions had violated his right to practice his religion and were inconsistent with the September 6, 2013 IGRC decision. (Dkt. No. 30-2, Ex. C to Pl.'s Decl., at 3). On September 20, 2013, plaintiff was interviewed by Lt. T. Blowers (who is not named as a defendant) as part of the grievance investigation. (Dkt. No. 23-3, Ex. B. to Mulvey Decl., at 20). In his interview notes, Blowers recorded his observation that plaintiff's hair was "just as [defendant Manna] described." (*Id.*). Blowers also noted that "I agree with Sgt. Manna and believe that [plaintiff's] hairstyle violates directive #4914." (*Id.*). On September 23, 2013, defendant Graham denied the grievance. (Dkt. No. 23-5, Ex. D. to Mulvey Decl., at 3). Plaintiff timely appealed this decision to CORC, which upheld the Superintendent's determination on March 26, 2014. (*Id.* at 1). Plaintiff commenced this action on October 15, 2015. (Dkt. No. 5).

## II.    <u>Summary Judgment</u>

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263, 272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

## III.   Qualified Immunity

### A.   Legal Standards

The doctrine of qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining if a particular right was clearly established, the Court "looks to whether (1) it was defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has confirmed the existence of the right, and (3) a reasonable defendant would have understood that his conduct was unlawful." *K.D. ex rel Duncan v. White Plains School Dist.*, No. 11 Civ. 6756, 2013 WL 440556, at *10 (S.D.N.Y. Feb. 5, 2013) (citing *Doninger v. Niehoff*, 642 F.3d

334, 345 (2d Cir. 2011)).  The court must ask whether the right at issue was established "'in a particularized sense so that the contours of the right [were] clear to a reasonable official'" in light of the specific context of the case, "not as a broad general proposition."  *Id*. (citing, *inter alia, Reichle v. Howards*, ___ U.S. ___, 132 S. Ct. 2088, 2094 (2012)).  A case directly on point is not required, and the question is not whether an attorney would learn about the right from researching case law, but whether existing precedent has "placed the statutory or constitutional question beyond debate."  *Id*. (citing, *inter alia, Fabrikant v. French*, 691 F.3d 193, 213 (2d Cir. 2012)).  Only Supreme Court and Second Circuit precedent, existing at the time of the alleged violation is relevant in deciding whether the right is well established.  *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004).

Because qualified immunity is "'an immunity from suit rather than a mere defense to liability,'" the Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'"  *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009) (citations omitted).  Defendants have based their summary judgment motion only on qualified immunity[5], so this court will focus its inquiry on that ground, and need not address the substance of plaintiff's First Amendment claim.  *See Pearson*, 555 U.S. at 236 (in determining whether qualified immunity applies, it may often be beneficial for the court to first consider whether the facts alleged show a constitutional violation, pursuant to *Saucier v. Katz*, 533 U.S.

---

[5] Defendants also raised qualified immunity as an affirmative defense in their Answer. (Dkt. No. 8, ¶ 12).

194, 201 (2001), but that sequence should no longer be regarded as mandatory).

## B.    Application

Inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990). In *Benjamin*, the Second Circuit found that a DOCCS grooming policy (since amended) that required all male inmates to receive a haircut upon entry into a correctional institution violated a Rastafarian plaintiff's First Amendment rights. *Id.* at 576-77. As the Second Circuit explained, "[a] fundamental tenet of the religion is that a Rastafarian's hair is not to be combed or cut, resulting in rope-like strands known as 'dreadlocks.'"

Accordingly, plaintiff has a clearly established First Amendment right to grow and maintain his hair in dreadlocks. The Grooming Policy has accommodated this right by expressly permitting "the dreadlock hairstyle" so long as the dreadlocks "extend naturally from the scalp." (Dkt. No. 23-3, Ex. B to Mulvey Decl., at 21). However, plaintiff has not alleged any facts that show that defendants prevented him from growing or wearing his hair in dreadlocks. He has only alleged that he was not allowed to grow and style his religiously-mandated dreadlocks in a manner that he preferred, based on DOCCS prohibitions on the display of shapes or designs in an inmate's hairstyle.

A long-standing principle of qualified immunity is that "clearly established law"

should not be defined "at a high level of generality." *Ashcroft v. al Kidd*, 563 U.S. 731, 742 (2011). The clearly established law must be particularized to the facts of the case. In applying that standard, this court cannot identify a case where a correctional officer acting under similar circumstances as defendants was held to have violated the First Amendment. Therefore, plaintiff's right to grow and style his dreadlocks in a manner that he prefers – distinct from his right to have dreadlocks – was not "clearly established" at the time that he was issued a misbehavior report for having what were perceived as shapes or designs in his hair.

This finding is consistent with other cases evaluating the scope of the First Amendment and application of qualified immunity in light of *Benjamin*. Courts considering the application of *Benjamin* to a prohibition on non-Rastafarian inmates' wearing of dreadlocks[6] have described the governing law as "unclear," due to the lack of additional Supreme Court or Second Circuit precedent. *Jouvert v. New York*, No. 10-CV-930, 2012 WL 6964386, at *10 (N.D.N.Y. Oct. 23, 2012) (Rep't Rec.), *adopted*, 2013 WL 372331, at *4 (N.D.N.Y. Jun. 29, 2013) (summarizing caselaw and granting summary judgment on qualified immunity grounds to correctional officers who ordered Muslim inmate to remove dreadlocks). Likewise, a recent decision found that there was no clearly established law invalidating DOCCS restrictions on when a Rastafarian inmate could wear his "crown," a religious head covering traditionally worn over dreadlocks. *Rodriguez v. Favro*, No. 9:14-CV-418, 2016 WL 1253848, at

---

[6] DOCCS no longer limits the wearing of dreadlocks to Rastafarian inmates. *See Pilgrim v. New York State Dep't of Corr. Svcs.*, No. 9:07-CV-1001, 2011 WL 6031929, at *2 (N.D.N.Y. Sept. 1, 2011) (noting that policy was updated on September 2, 2010).

*10 (N.D.N.Y. Mar. 9, 2016) (Rep't Rec.), *adopted*, 2016 WL 1261120 (N.D.N.Y. Mar. 30, 2016).

Even if plaintiff's right was well-established, this court would still recommend that defendants' summary judgment motion be granted, because a government actor may still be shielded by qualified immunity "if it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum*, 929 F.2d 922, 925 (2d Cir. 1991) (citing *Magnotti v. Kuntz*, 918 F.2d 364, 367 (2d Cir. 1990)). Objective reasonableness turns on the "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. *Id*. Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, __ U.S. __, 136 S.Ct. 305, 308 (2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

A court must also account for the "legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained," appropriately deferring to "policies and practices that in th[e] judgment" of prison officials "are needed to preserve internal order and discipline and to maintain institutional security." *Kingsley*, 135 S.Ct. at 2473 (quoting *Bell v. Wolfish*, 441 U.S. 520, 546-47 (1979)). In addition, "[w]hen officials follow an established prison policy, as defendants did here, their entitlement to qualified immunity depends on

10

'whether a reasonable officer might have believed that the challenged order was lawful in light of legitimate penological interests supporting' the directive." *Barnes v. Furman*, 629 F. App'x 52, 57 (2d Cir. 2015) (citations omitted).

Defendants have explained that the Grooming Policy prohibits any designs or shapes to be cut or woven into an inmate's hair in order "to deter inmates from displaying signs or symbols associated with prohibited associations or affiliations (e.g. "gangs")." (Dkt. No. 23-6, Graham Decl. ¶ 3). This is a legitimate penological interest. The record also shows that three different correctional officers – defendants Manna and Tabate, and non-party Blowers – separately observed what they believed was a "checkerboard" or "diamond" design woven into plaintiff's hair in violation of the Grooming Policy. In addition, plaintiff has not alleged that any of the defendants were aware that he was merely in the beginning stages of growing dreadlocks, or that any defendants had seen the IGRC determination on his earlier grievance.[7] Plaintiff has also failed to allege that any of the defendants had the authority to ignore the plain language of the Grooming Policy. Therefore, it was objectively reasonable for all of the defendants to believe that they were not violating plaintiff's First Amendment rights when they found him in violation of the Grooming Policy's prohibition on designs or patterns in inmates' hair. Based on this analysis, this court recommends that defendants' motion for summary judgment on qualified immunity grounds be granted as to plaintiff's First Amendment claim.

---

[7] As noted above, plaintiff asserted that the prior IGRC determination reaffirmed his basic right to wear dreadlocks, as required by his religion. (Compl. ¶ 3). He does not claim that the prior decision addressed whether he could or could not display shapes or patterns in his hair.

## IV.    Equal Protection

Defendants have requested that plaintiff's entire complaint be dismissed, but their motion for summary judgment makes no reference to plaintiff's equal protection claim. (Dkt. No. 23).  However, based upon a review of all papers submitted in connection with this action, this court recommends dismissing plaintiff's equal protection cause of action for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  This section provides that the court may dismiss an *in forma pauperis* action *sua sponte* at any time if the court determines that, *inter alia*, the action fails to state a claim on which relief can be granted.

### A.    Legal Standards

The Equal Protection Clause of the Fourteenth Amendment provides that the government shall treat all similarly-situated people alike.  *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citing *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).  Generally, the equal protection clause has been "concerned with governmental 'classifications that affect some groups of citizens differently than others.'" *Engquist v. Or. Dep't of Agric.*, 533 U.S. 591, 601 (2008).  To establish an equal protection violation, the plaintiff must show that the defendants applied a different standard to similarly situated individuals.  *Skehan v. Village of Mamaroneck*, 465 F.3d 96, 111 (2d Cir. 2006).  Plaintiff must first show that he was treated differently than others similarly situated because of intentional or purposeful discrimination.  *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).  Then, plaintiff must show that the difference in treatment cannot survive the appropriate level of

scrutiny. *Id.*

### B.    Application

In his Complaint, plaintiff asserts that:

[i]t is a fact that defendants do not throw Jews in the box or in keeplock when they are growing their sidelocks. (The little curles [sic] that the Jews wear on the side of their heads).  However, if an inmate is a Rastafarian, we have to either cut off our hair, or in  the alternative, be sent to the box or keeplock until the direct order to violate our religion is adhered to . . . . it is apparently clear that the defendants have one set of laws for the jews and another set of laws for Rastafarians.

Compl. ¶ 16-17.  Mindful of the Second Circuit's instruction that a pro se plaintiff's pleadings must be liberally construed, *see, e.g., Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008), I allowed this Equal Protection claim to proceed after initial review in my October 28, 2015 Decision and Order. (Dkt. No. 6, at 3-4). However, after consideration of the more fully developed record provided in connection with this motion, I recommend that this unsubstantiated equal protection claim be dismissed.

As described above, an Equal Protection claim must state that the defendants applied a different standard to similarly situated individuals.  Although the pleading standard does not require "detailed factual allegations," it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  Furthermore, a complaint does not suffice if it tenders 'naked assertion[s] devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555, 557).

Plaintiff's Equal Protection argument is one such claim.  Plaintiff has provided no examples to support his allegations that defendants treated Rastafarian inmates differently than Jewish inmates, or that defendants forced Rastafarian inmates to cut off their hair or face punishment.  The record does not support plaintiff's allegation that he was ordered to cut off his dreadlocks, only that he could not maintain them in a particular hairstyle displaying shapes or patterns.  In addition, plaintiff has not alleged, and the record does not show, one instance in which any of the three named defendants treated plaintiff differently than other inmates because of his Rastafarian faith, or handled any perceived violations of the Grooming Policy more favorably for other inmates because of their religion.  Plaintiff must remember that he is suing individuals, and that the defendant must have had *personal responsibility* for the conduct making up plaintiff's claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

The generality in plaintiff's Equal Protection claim fails to meet this standard, and this court recommends that it be dismissed for failure to state a claim.  However, if the court adopts this recommendation, I also recommend that plaintiff be given the opportunity to propose an amendment that would add specific factual allegations to support the claim that he was treated differently than any other inmate under the same circumstances because plaintiff was Rastafarian, in light of the *sua sponte* dismissal and defendants' failure to address the Equal Protection argument in their motion. *See Ellis v. Wilkinson*, 81 F. Supp. 3d 229, 238-39 (E.D.N.Y. Jan. 28, 2015)  (considering whether to grant plaintiff leave to amend after finding that plaintiff failed to state a

plausible claim under section 1983); Fed. R. Civ. P. 15(a)(2) (providing that a court should freely give leave to amend "when justice so requires.").

WHEREFORE, based on the findings above, it is

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 23) be **GRANTED AS TO PLAINTIFF'S FIRST AMENDMENT CLAIM**; and it is

RECOMMENDED, that plaintiff's **EQUAL PROTECTION CLAIM BE DISMISSED WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.


Dated:        January 17, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge